Good morning everyone. As you can tell, Judge Bybee is unavoidably absent this morning due to a death in the family. He remains a member of the three-judge panel for all of the cases on calendar for today. For those that are argued, he will listen or view the videotape of the argument and participate fully in the decision and disposition of those cases. The first case we have on calendar is submitted on the briefs pursuant to a prior order, that's Ahn v. Sanger. The second case is also submitted on the briefs, that is Sanger v. Ahn, and we will hear oral argument, a consolidated oral argument in the next set of cases, Organic Cannabis Foundation v. Commissioner of Internal Revenue and Northern California Small Business Assistance v. Commissioner of Internal Revenue. Counsel, you may proceed. Good morning, Your Honors. May it please the Court, Matthew Carlson for Appellants Organic Cannabis Foundation, LLC and Northern California Small Business Assistance, Incorporated. And if I may, I'd like to reserve three minutes for rebuttal. Internal Revenue Code section 6213a generally gives taxpayers 90 days to file a petition in the U.S. Tax Court. In this case, the tax court dismissed the taxpayers petition for lack of jurisdiction because the petitions were delivered on day 91. This court should overturn the tax court's order of dismissal for lack of jurisdiction and remand the case to be considered on the merits. First, I'd like to talk about jurisdiction. This court should find... Before we do that, 6213a says that a taxpayer who lives in the United States have 90 days to file a petition asking the tax court to review for the notice of deficiency, correct? That's accurate. And then, there are some It says there's a timely mailing of the tax document is treated as timely filing if certain conditions are met. The first is that it goes by the U.S. mail. And the second is, you can go to 7502 F2, private services are allowed, but they have to be those they designate, correct? That's accurate. And so, if we go on to the and none of the exceptions apply, correct? Well, in this case, it's our contention that... Well, just read the rule. Just read the rule. I mean, it isn't... The language of the statute is not ambiguous at all. It's very clear. It says you can do it by mail, and they could have. You could do it by private service as long as you're So, under the statute, seems like the taxpayer tax court didn't err in determining that it was not timely filed. Well, a couple of points on that, Your Honor. First, it's the appellant's contention that the service that was utilized does, in fact, qualify. The service that was utilized is not one who was designated, correct? It's our contention that the service that was Was it designated at that time? It was not designated at that time, was it? It was thereafter, but it was not designated at that time, correct? Our contention is that it did constitute a service... Well, now, just a minute. There is a designation the secretary has to give, and that service did not have the designation. Well, it's our contention that it does qualify as... It's not about you contending it. It's about the statute is pretty clear. They can take advantage if they are designated by the secretary, and so you look at what the secretary designated, and you used a service not designated. Isn't that true? Your Honor, it's our position... Now, your position is not that. Just answer my question. It's pretty simple. Yes, no question. Did you use a service designated by the secretary? Yes, Your Honor. No, you did not. Your Honor, it's our contention that... Your contention is that you want me to look through that statute and say it's not clear and unambiguous. It's quite ambiguous, and therefore, I ought to write something into it. Isn't that your contention? Well, the code refers to the service designated private delivery services. You want me to read what the code says? It doesn't say that at all. It says they're allowed to take advantage of the rule if the private services are designated by the secretary. Correct. Period. Correct. And it wasn't. In this case, the IRS designates these services by issuing administrative notices. And they didn't. In this case, the And it provided that FedEx had two first... two overnight delivery services... But just a minute. All these things that you're arguing are just for me to say somehow these statutes that I have in front of me are ambiguous, and therefore, I ought to be reading something in, and I'm trying to figure out why it's not clear and unambiguous. I don't think the statute is ambiguous at all. Okay, then if you didn't have this designation, you don't get in. Right. Well, the next day delivery service used in this case was not any different than the other services that were approved. It allowed for the earliest delivery time. But that isn't the question. It isn't a question whether it's inferior service or whether it's a good service, equally good, or whether it's a service that's better. The statute's pretty clear. It's designated. That's accurate. And un-designated are not there, regardless of how good or bad they are. But in this case, you have a situation where FedEx... What happens if FedEx offers a different feature to approve delivery services? Does that have the effect of uncertifying or decertifying a designated service merely by adding new features or, in this case, by changing a name, marketing it under a new distinct service, whereas really it's the same as the other services? How do you fit it into the statutory language? Are you asking us to adopt a broader understanding of the term designate or a broader understanding of the term service or both? And if so, explain how it ties into the language. Sure. It's not really a statutory interpretation. It's an interpretation of the actual notice that the IRS issued designating services and what happens where you have a private delivery service that offers new features or that offers marketing purposes, that the language in the notice is silent when that happens. Well, no, the notice specifically says, after designating certain services, that other services offered by those carriers are not designated. How do you address that sentence? Well, we address that by saying that it's the same service. The fact that there's a marketing change in the name or if there's an additional service that's offered, such as photographing the package on the doorstep or something to that effect, the fact that FedEx chooses to do something like that unilaterally without getting consent from the IRS doesn't have the effect. So it's your view this is equivalent, this is the same service as one of the previously designated, they just changed the name? It wasn't a brand new service that was... Correct. That's our contention. Why is it then that the service was designated on May 6, 2015? If it was just a change of name, it wouldn't need to designate it. Sure. It was, in fact, added two weeks later. Well, I know, but that's why, because it wasn't designated before and it isn't simply a change of name. It's another designation then by the Secretary. Your Honor, our position is still that it's the same service. I understand. Okay. Thank you. So that issue relates to, you know, was the petition timely filed? The other argument in this case is that the tax court, that Section 6213a is a non-jurisdictional claim processing rule, which is subject to defenses such as equitable tolling and forfeiture or waiver. In this case, prior court holdings have regarded the 90-day deadline as prevailing. Supreme Court precedent has recently clarified that statutory time bars are almost never jurisdictional. The Supreme Court has repeatedly... What are we concerned about in this 90-day statute? What's our concern? What are we supposed to be looking this 90-day statute to determine? Are we concerned with the tax court's ability to redetermine deficiencies in a timely manner? The Section 6213a does two things. It provides a deadline and it provides restrictions on the IRS during that deadline. Yeah. So it really says to what we're really saying is, we're talking about whether the tax court has an ability to determine these deficiencies and when and how they can do it. Isn't that what we're doing? 6214 is the general grant of jurisdiction in this case. So 6214 has four distinct provisions which provide jurisdiction to the tax court to redetermine a deficiency or otherwise redetermine the correct amount of tax. 6213 does use jurisdictional language. It includes the penultimate sentence. It says the tax court shall have no jurisdiction to enjoin any action or proceeding or order any refund under the subject. Is it your position that that's only a partial deprivation of jurisdiction? So that language is really ancillary to the tax court's core functions of determining deficiencies. That's what the tax court does. That language was added in 1988, almost 60 years after the original language was written into the code. But it says very clearly that an untimely petition has jurisdictional consequences. Is it your position that it only has partial jurisdictional consequences? That's correct. Only to the tax court's ancillary jurisdiction to determine the situation. But why would that make any sense? Why would they allow it to go forward when it had no ability to enforce? Well, because the tax court traditionally didn't have the authority to enjoin the IRS from collecting or assessing tax during that 90-day period. So the taxpayers would have to go to the district courts in order to get an injunction to stop the IRS from collecting or assessing the tax prematurely. And in 1988, Congress added this provision to provide jurisdiction to the tax court. If that were to be your argument and you really wanted to make it, why didn't you make it to the tax court? So the tax court did address— Just a minute. If that were your argument, why didn't you address it to the tax court? Why didn't you make that argument? Well— If you don't make the argument, why don't I say it's waived? Well, there's a few points on that, Your Honor. The— Well, there's a few points on it that I can, in my discretion, say it isn't waived. Sure. But I guess the big problem that I have in this is, if this was your big issue, why didn't you make it to them? So we had a chance for them to deal with it rather than have it before us. Now, I was a district judge. I frankly hated the Ninth Circuit looking over the top of my shoulder and deciding cases on things they never ever gave to me. And that's exactly what you want to have happen here. Why? In this case, the tax court did address equitable tolling. It specifically said it did not have equitable powers to extend the deadline for— Well, you're not really going to argue the tax court's one line, that it didn't have equitable powers to extend the deadline, is enough to say they considered it, are you? Well— I mean, that was just a statement of tax court precedent. That didn't even focus on the issue. Sir, the point is well taken, Your Honor. The panelists also did argue the forfeiture issue as well. Well, let me ask you this. If we're really going to talk about this case, it has to be developed. But then it either has to not depend on the factual record developed below or the record had been developed. No one even argues that the record has been developed or does not depend on it being developed. Nobody even argues that. Why? That's the big question. I can't get it under an exceptional case, and it certainly isn't a new issue. So I'm down to one of law, and then I've got to find that the record is adequately developed or it doesn't depend on it being adequately developed. Your Honor, the panelists did make that point on brief, that this was purely an issue of law. Well, but just a minute. I don't think it—nobody talks about whether the record had been developed. Because even if you get here, the next thing you're going to get is equitable tolling. And if I'm going to determine equitable tolling, then I have to determine whether the litigants have diligently pursued their rights. Well, to be fair, that is totally factual. That has nothing to do with law. So I'm having a tough time how that can depend on this factual record, which was not developed or did not need to be developed. Your Honor, we believe the factual record is adequately developed. How can it be adequately—what is there in this record that tells me whether this is a good case for equitable tolling? We don't know why your client waited for 77 days to do anything. Well, the fact that the taxpayer— We don't know, do we? I mean, they had 77 days. Now, I remember when I was in a situation like yours, and my client sent me to Washington, D.C., to file the thing, because they were so worried that it would be done on time. In this case, nobody did that. And so equitable tolling will depend a lot on why you did what you did, wouldn't it? And that's not here. That's correct, Your Honor. Our point is still that there's enough in the record here to set forth an argument for equitable tolling. Counsel, I know you wanted to save time for rebuttal, and you're almost— Yes, Your Honor. Thank you. I'd like to save the remainder of time. I'll give you two more minutes when you come back up. Thank you. Good morning, Your Honors. Paul Olulis from the Department of Justice Tax Division on behalf of the Commissioner of Internal Revenue. May it please the Court, the tax court appropriately dismissed this case for lack of jurisdiction. As the Court pointed out in its questioning to Appellant's counsel, the petitions in this case were untimely under the plain of the controlling statute. Furthermore, Section 6213A's timing provision for filing a petition in the tax court is a jurisdictional requirement, and the tax court is divested of jurisdiction, or rather, never acquires jurisdiction in the absence of a timely filing. Moreover, even if this were not a jurisdictional statute, under the Supreme Court's precedence, equitable tolling should not apply to extend the deadline in this case or in any case. Why does it make any sense to punish these litigants? Because the Secretary who was in charge of this mailing tried to do the right thing and pick the earliest service? If she had picked the later service, which happened to be on the list, they would have been fine. But because she tried to do one better and really make sure it got in on time, your position is that they lose their rights to proceed in the tax court. Why does that make any sense? I think for two reasons, Your Honor. First, because there were other options available to the appellants when they chose the service that they chose. The notice that controlled which private services were designated had been published for many years before this happened. And in addition, there was no need to resort to a private service, delivery service, because mailing is always an option under Section 7502. So depositing in the U.S. mail alone would have made timely filing here. And in the record, if you review the affidavit that was filed by the Secretary in this case, she indicated in her declaration that the following day, because she had sought an email confirmation of delivery to the tax court, the following day she had not received that email delivery. And therefore, she called the tax court to find out whether it had been filed or not. And she was told it had not been filed. Now, that day was the last day for filing. And under Rule 7502A, if appellants counsel had placed the petitions in the mail even that day, after they knew that the petition had not been delivered by FedEx, they could have gotten the benefit of the 7502 mailbox rule for service by U.S. mail. What does the record say about the status of the tax court on, I think it was April 22nd, was there in fact some kind of closure of the building? Your Honor, the record contains no evidence beyond the declaration, I believe again from the secretary at the appellant's firm, who indicated that she had spoken with an operator at FedEx, who was reading the notes that were put into the system by the FedEx delivery person, which may have indicated that there had been some kind of closure around the tax court. There's no evidence that the tax court was closed that day. The tax court clerk's office was open that day. And Well, I mean, what the ruling says is that it was not, it was not closed for the whole day. So it kind of coyly doesn't say whether it was closed for part of the day. Your Honor, I don't think that there's any, there was no finding by the tax court as to whether it was closed or not, specifically, or the time periods during which it was closed. I think when the tax court made that statement, it was simply trying to make the point that even if the FedEx driver had been unable to access the court at the time that he first tried to make the delivery, that doesn't mean that he wouldn't have been able to come back later in the day and seek to do delivery again. Would we, would we need to reach the jurisdictional question? Could we just simply suggest it was untimely and then dismiss? Well, Your Honor, I think the, if it's untimely, then it should be dismissed if it's jurisdictional. What if it isn't? If it's not jurisdictional, then I believe the court would have to address But we've got to reach the jurisdictional issue. Not necessarily, Your Honor. If the court determines that even if it is not jurisdictional, equitable tolling should not apply in this case, then it still need not reach the jurisdictional question. But if we decide equitable tolling should or should not apply, can we really make that determination on this record? I mean, it seems to me that that's one of the reasons why this may not be really a question of law, because there are facts in this situation which are not in the record, which would adequately tell me whether we ought to have equitable tolling or not. So I guess, again, my question is, can I make this decision without determining it's jurisdictional? Yes, Your Honor. To make it a little bit clearer, if this court determines that the time limitation in section 6213A can ever be equitably tolled, it would need to remand the matter to the tax court for a factual inquiry into whether equitable tolling should apply in this case. If the court determines, however, that under no circumstances could 6213A ever be equitably tolled following Brokamp and that line of cases, then there would be no need to remand for that factual inquiry. If we were to hold that the issue of equitable tolling was forfeited and that, given the fact-intensive nature of it, the forfeiture should not be overlooked, would we then need to reach the jurisdictional issue? No, Your Honor, I don't think so. Because if the equitable tolling issue is forfeited, then even if it would have applied, the appellants have lost their ability to make that challenge, which means there is no basis for finding that the petitions here were filed in a timely manner, even if the time limit is extended for a day or some period of time. They've lost their ability to make that argument. Well, my good colleague reached the issue. I wondered if you would reach, but I now know your answer about that. Yes, Your Honor. Now, on that point, we believe that there is ample reason to believe if the court were to decide that it needed to figure out whether equitable tolling could ever apply to Section 6213A, that it doesn't apply here. The Supreme Court's guidance in this case, I think, is a little bit different than what has been argued by the appellants in their briefs. They seem to want to lay the cases out and examine a checkmark of was this factor met, was that factor met? In fact, in Brokamp, the Supreme Court instructs that really the inquiry is, is there good reason to believe that Congress did not want the equitable tolling doctrine to apply? And that's really what the Supreme Court has tried to do in its cases, is look at each individual circumstance and determine if under that particular provision, is there a good reason to think that Congress did not want tolling to apply? And with respect to 6213A, there are many good reasons to think that. What about the idea that the tax corridor held that the notice of deficiency was valid? Do you want to address that? Certainly, Your Honor. I mean, he didn't argue it, but I just wondered if you wanted to add an argument to what you did in your brief about that. Well, Your Honor, I think that the argument is stated clearly in the brief, which is that the notice of deficiency, first, there is no evidence in the record to show that the notice was mailed to the wrong address. There is, what we have is simply the internal tracking log that the IRS employee used to write down where she sent the package. But that raises a fair inference that what she wrote down on the log is what was on the exterior of the envelope. Well, she declared that she had put the full address on the envelope, meaning including the post office box. Another point on that, the notice itself contains the post office box number in the address. And the zip code that's in the address also contains the post office box. It's the four digits that follow the zip code. It's a little dash. And that is also appearing on the notice. So it's speculation to say that the notice was not mailed to the proper address. And even more to the point, the appellant here received the notice. So were these sent by a certified mail that they had to sign for them? Would they put a notice in the box and then they'd have to go pick them up? How did that work? I'm not certain about that specific, the specific methodology by which they mailed  Because the log indicates it was certified. And then the tracking indicates a difference between the date when it was deposited and the date when it was picked up. Do you know what accounts for that? And did they have to sign? And did it show up in the box? I don't know the answer to that question, Your Honor. I'm not sure if it's in the record or not. But the record is uncontroverted that, in fact, the appellants received the notice with 78 days left before the petition was due in the tax court. And that is more than ample time to prepare a petition for redetermination of the deficiencies that are determined by the secretary, by the commissioner, and get that filed in the tax court. And for that reason, because there was actual delivery with more than ample time left to file the petition, even if the notice had been sent to the wrong address or an improperly that actual receipt would eliminate any problem with the validity of the notice there. Are you really arguing that the 77 days is no prejudice? Is that what you're arguing? Yes, Your Honor. Yes. Because under McKay, if the actual notice is sent without prejudicial delay, then there's no problem. And under Earhart, you can have it under actual notice, no matter whether they mail a notice, but it has to do with the prejudice. Yes, Your Honor. And 78 days is more than adequate to prepare the petition in this case. Now, getting back to the equitable tolling issue, among the reasons why equitable tolling could never apply to 6213A, that would not be a reasonable approximation of what Congress's why Irwin imposed this presumption, is the idea that that presumption would substitute for congressional intent or reasonably approximate congressional intent. With 6213A, it doesn't do that. And the first reason is because 6213A does more than just delineate the time limit in which someone can come into tax court. It also, it has two other effects. It delineates when the IRS can assess and collect taxes. When it can initiate that process of assessing and collecting taxes. And it also controls district court jurisdiction for issuing refunds. And both of those things change 6213A. They make it very different from other cases that have been analyzed where equitable tolling has been applied. Let me ask you the last question, which is not in the record and which is just something that I thought about. Can this taxpayer still pay the taxes and go to district court in this case? Yes, Your Honor. That avenue is available. That is still open to them. That avenue is available, Your Honor. Interestingly enough, because of some provisions in the tax code, if appellants are correct, that section 6213A is not jurisdictional and the tax court dismisses their petition for being untimely filed, they may in fact lose their ability to file that refund suit. And under section 7459D of the Internal Revenue Code, a decision by the tax court, a dismissal by the tax court is considered a decision on the merits that the deficiency is as stated in the notice of determination. Unless the dismissal is for lack of jurisdiction. And so in this case, if it turns out that this dismissal would not be for lack of jurisdiction, but merely for being untimely under a claims processing rule, then under 7459D, that would count as a determination on the merits by the tax court that the deficiency is as stated in the notice. This court has held and many courts have held that tax court rulings are res judicata. And once that ruling comes down, the refund action is precluded. But if it's jurisdictional and dismissed as jurisdictionally out of time, then they could pay the amount, go to district court and litigate the same issues that they were trying to raise in the tax court. That's correct, Your Honor. And that's another reason why 6213A is different from the jurisdictional, from the time bars that the Supreme Court has analyzed and found not to be jurisdictional in other cases. Because one of the things that the Supreme Court was greatly concerned about was the harsh result that could come when you attach a jurisdictional label. Here, that harsh result is at least softened, if not eliminated, because there's an alternative remedy in the refund action in district court. And as I just pointed out, making this time limit not jurisdictional may, in fact, create the harsh remedy that the Supreme Court was concerned about in its other cases. If there's no further questions, we would ask this Court to please affirm the tax court. I have no other questions. Thank you, Ken. Can you add two minutes to the clock? Thanks. Thank you, Your Honor. A few brief points on rebuttal. The IRS discussed the attempted delivery to the tax court, in this case, Rule 6A3 of the Federal Rules of Civil Procedure. It does apply to tax court proceedings. Even if the statute is jurisdictional, it's still applicable. In this case, the IRS- But the FedEx, this service, and the reason why you're in trouble is because the service was the first thing in the morning. So the inference is that if there was some kind of closure or obstacle to getting in, it was early in the morning. And are there any cases that support the view that that excuses you for the rest of the day? Yes, Your Honor. There's a case, for example, United States Leather cited in the briefs. The Fifth Circuit applied Rule 6A3 and found that the deadline was extended where the litigant was in another city and was unable to reach the court. In that case, it was due to an ice storm. But in that case, we have a kid- But the court was closed all day. Pardon me? The court was closed all day. In United States Leather, the court was open. Well, but the litigant was unavailable all day. Correct. The point we're trying to make here, Your Honor, is that even partial restrictions on access to the court can have the impact of creating inaccessibility. That's not partial. That was a total restriction on that particular day, wasn't it? Correct. When I read that case? United States Leather, correct, Your Honor. So we've got a litigant who can't access. Similar in this case, Your Honor. We've got a litigant located in the Bay Area, doesn't have the ability to drive to Washington, D.C. and deliver- But they had the ability to put another copy in the mail. I mean, once you knew there was a problem, why shouldn't- I mean, presumably the lawyers then found out they could have just done belt and suspenders and mailed another one that day. There are other options, Your Honor. That's accurate. In this case, we do think that the fact that the FedEx employee was unable to access the tax court, even if it was fleeting, in this case, the rule does not require inaccessibility for the entire day. The driver was unable to access it. The evidence was less than clear in this case, the nature of the inaccessibility, because the IRS waited for a year and three months to raise this as an issue in the tax court. And so by that time, FedEx had purged its records according to its normal record-keeping practices, and there was no detailed example of why FedEx was unable to deliver the petition to the tax court that day. But you really didn't answer my good colleague's question, which is, once knowing what you knew, it was simple. You could just put it in the mail. So there was an option. It wasn't as if you didn't have any access, like the person who was out in the snowstorm all day long. In this particular instance, you just easily could have just put it in the mailbox, and it had been done. Your Honor, there are other cases, for example, where the court itself was closed, but the mailbox was open, and the litigant in that case could have delivered it into the court's deposit box. And that was available to them in that case, and the court still found that it was enough to grant the litigant an additional day to file the document. All right. Thank you, Your Honor. All right. The cases, two cases just argued, will be submitted.
judges: Bybee, N.R. Smith, Collins